STATE of Wisconsin, Plaintiff-Respondent,

v.

Isace A. WHITING, Defendant-Appellant.

Court of Appeals

*No. 02–1721–CR. Submitted on briefs December 9, 2002.
—Decided April 17, 2003.*

2003 WI App 101

(Also reported in 663 N.W.2d 299.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *R. Michael Waterman* of *Mudge, Porter, Lundeen & Seguin, S.C.*, Hudson.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edwin J. Hughes*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Isace Whiting appeals a conviction for possession of methamphetamine. Whiting claims the circuit court erred by not granting his motion to suppress evidence seized from his residence after officers executed a search warrant without first knocking and announcing their presence. We conclude that the circuit court should not have denied Whiting's motion to suppress without hearing evidence regarding the circumstances which existed at the time of the no-knock entry.

¶ 2. We therefore reverse Whiting's conviction and remand to the circuit court for an evidentiary hearing. If after taking evidence the circuit court concludes that the officers had, at the time of their entry, "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime," *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997), the court shall reinstate the conviction. If the court concludes otherwise, however, it must grant Whiting's suppression motion.

724

## BACKGROUND

¶ 3. A sergeant with the Dunn County Sheriff's Department received information from a "citizen informant" that two men from Washington (state) had "been coming to Whiting's residence every other weekend . . . and using it as a distribution point for methamphetamine." Based on this and other information, the sergeant obtained a search warrant for Whiting's residence.[1] Other averments in the warrant application included: (1) Whiting told the informant that, on their last trip, the Washington men had "brought approximately five to six pounds of methamphetamine"; (2) the informant had observed a "9mm handgun" in the "beltline of one of the individuals"; (3) Whiting told the informant that "they carry a shotgun in the car"; and (4) the informant told the sergeant that "the boys from Washington were in town" on the date of the warrant application, that they were making methamphetamine drops and would be returning to Whiting's home, and that they would stay "until the drugs are gone."

¶ 4. The sergeant "specifically" requested in the warrant application "that the court authorize a 'no-knock' search warrant due to the danger to the officers." The warrant as issued, however, contained no such authorization. There is no dispute that when officers executed the warrant later that night, they did not knock and announce their presence before entering Whiting's residence. The search, conducted about four hours after the warrant was issued, yielded a quantity of methamphetamine and marijuana, along with various paraphernalia, scales, and apparent drug packaging materials.

---

[1] Whiting does not challenge the issuance of the search warrant.

725

¶ 5. The State charged Whiting with possession of methamphetamine and two other drug offenses. He moved to suppress the evidence seized from his home, asserting that the officers' no-knock entry violated his rights under the Fourth Amendment. At a short initial hearing on Whiting's motion, the court heard no evidence but instructed the parties to submit briefs on the issue of whether the lack of no-knock authorization in the warrant was fatal, given that the warrant application had requested such authorization and contained averments that would arguably support a no-knock entry.

¶ 6. Following submission of the parties' briefs, the court permitted counsel to present oral arguments and it then rendered its decision denying the motion, again without taking evidence.[2] The court concluded as follows:

> [C]learly here the affidavit set forth a reasonable basis that would justify a no-knock situation. Now, does that mean it's automatic? I don't believe that it's . . . automatic. But clearly if under all the facts and circumstances — the information in the affidavit plus the circumstances of that evening when this warrant was executed were consistent with that, clearly I think would be reasonable and it was reasonable under all these facts and circumstances.
>
> And, again, I'm limiting my decision to the information that's in this record, namely the sworn affidavit

---

[2] During argument, while discussing the supreme court's decision in *State v. Henderson*, 2001 WI 97, 245 Wis. 2d 345, 629 N.W.2d 613, *cert. denied,* 534 U.S. 1033 (2001), the prosecutor noted that "we did have witnesses planned to be here [at the initial hearing on the motion to suppress]. And the Court, I believe on that morning, said we would not be holding an evidentiary hearing."

of [the sergeant]. And I think that's sufficient to justify in this case the no-knock entry.

¶ 7. Following the denial of his suppression motion, Whiting entered into a plea agreement with the State whereby he pled guilty to possessing methamphetamine and the other charges were dismissed. He appeals the judgment of conviction, citing as error the court's denial of his motion to suppress.[3]

## ANALYSIS

¶ 8. " 'Whether searches and seizures pass constitutional muster is a question of law,' " which we review without deference to the circuit court. *State v. Meyer*, 216 Wis. 2d 729, 746, 576 N.W.2d 260 (1998) (citation omitted). The "knock and announce" rule requires police, before forcibly entering a residence, to announce their identity and purpose and to momentarily wait for the occupants to refuse their admittance or open the door. *State v. Henderson*, 2001 WI 97, ¶ 20, 245 Wis. 2d 345, 629 N.W.2d 613, *cert. denied*, 534 U.S. 1033 (2001). The Supreme Court has held that the common law "knock and announce" principle is a part of the reasonableness inquiry under the Fourth Amendment. *Wilson v. Arkansas*, 514 U.S. 927, 930 (1995). The Court noted, however, that announcement is not required for every entry, and exceptions exist when legitimate law enforcement interests sufficiently outweigh a citizen's privacy interest. *See id.* at 934.

---

[3] Notwithstanding a plea of guilty or no contest, a defendant may appeal a judgment of conviction in order to challenge the denial of a motion to suppress evidence. *See* WIS. STAT. § 971.31(10) (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 9. The Court subsequently established in *Richards v. Wisconsin*, 520 U.S. 385 (1997), a standard for determining when law enforcement's interest in entering unannounced outweighs a citizen's interest in having police announce their presence when executing a warrant.

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394. The court further explained that "the reasonableness of the officers' decision [to execute a no-knock entry] . . . must be evaluated as of the time they entered" the premises to be searched. *Id.* at 395.

¶ 10. The Wisconsin Supreme Court has also emphasized that "the reasonableness of an officer's decision to enter without knocking and announcing is evaluated by a reviewing court based upon information known to the officer at the time of entry." *Henderson*, 245 Wis. 2d 345, ¶ 27. The court explained that *Richards* and another U.S. Supreme Court precedent

> yield a number of fundamental principles: 1) the rule of announcement is a requirement of the Fourth Amendment's reasonableness clause, not its warrant clause; 2) the *validity of a no-knock execution of a search warrant* is subject to after-the-fact judicial review for constitutional reasonableness, which *is determined by reference to the circumstances as they existed at the time of the entry;* and 3) the manner in which a search warrant is executed is not subject to the requirements of the warrant clause and therefore does not require prior judicial authorization.

*Id.*, ¶ 29 (emphasis added).

¶ 11. Whiting argues, therefore, that the trial court erred in denying his motion to suppress without receiving any evidence as to the circumstances existing at the time of execution of the warrant which led the officers to dispense with the rule of announcement. Whiting also contends that the facts set forth in the sergeant's affidavit were insufficient in any event to support the requisite reasonable suspicion to effect a no-knock entry. We agree with Whiting's first contention but not his second.

¶ 12. The sergeant's affidavit establishes that two men, one of whom was recently observed by a reliable informant to have been armed with a handgun, and both of whom may have had access to a shotgun, were staying that weekend at the Whiting residence. The men were expected to return there on the evening the warrant was issued. Based on their past activities as reported to the sergeant, the pair could well be in possession of a significant quantity of methamphetamine. These circumstances, if unchanged at the time of the entry, are more than sufficient to provide the officers a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards*, 520 U.S. at 394.

¶ 13. The defect in the present record is not, therefore, a lack of information to support a reasonable suspicion of danger or futility in an announced entry, but the failure of the State to establish that officers had no additional information at the time of entry that

729

would have negated the circumstances set forth in the warrant application. As the supreme court explained in *Meyer*:

> The reasonableness of an officer's decision to enter a premise without first knocking and announcing his or her presence must be evaluated by a reviewing court as of the time of the entry. Therefore, even if the particular facts initially available to an officer provide reasonable suspicion of exigent circumstances, that *reasonable suspicion may be negated where additional facts are revealed prior the execution of the search warrant that would negate an officer's earlier suspicion of exigent circumstances. Cf. Cleveland*, 118 Wis. 2d at 627 (Where a no-knock warrant has been issued "[c]ircumstances which justify noncompliance with the rule of announcement . . . might change . . . before the officer's entry.").

*Meyer*, 216 Wis. 2d at 753 (citation omitted) (emphasis added).

¶ 14. We therefore conclude that the circuit court erred in upholding the no-knock entry without ascertaining whether the circumstances described in the warrant application had changed because of additional facts known to the officers at the time they executed the warrant. It would have been a simple matter for the State to present testimony from an officer to establish that the warrant was executed at a time when the officers knew or reasonably believed the Washington men were present in Whiting's home, if that was in fact the case. The record suggests that the State was prepared to present such testimony at the initial hearing on Whiting's motion, but the court apparently did not deem an evidentiary hearing necessary. It was, however, and we remand so that State may present evidence regarding the circumstances at the time of entry.

¶ 15. The State acknowledges in a footnote that we may conclude a remand for an evidentiary hearing is in order, but it presents two arguments why an evidentiary hearing is not necessary in this case. First, relying on *State v. Eason*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625, it argues that a court may uphold a no-knock entry as reasonable based only on information set forth in a warrant application. Second, the State posits that police would not have executed the warrant "until they had reason to believe that the individuals from Washington were in fact present in the Whiting residence," and that we should make this inference because the two men were indeed arrested in Whiting's residence after the entry. We reject both of the State's contentions.

¶ 16. Contrary to the State's contention, we do not read *Eason* as holding that if a warrant application contains sufficient justification for a no-knock entry, the State may be excused from presenting evidence that officers had no cause to believe those circumstances had changed at the time of entry. *Eason* dealt with a search warrant that had authorized a no-knock entry. The circuit court and this court both concluded that the warrant application did not contain sufficient facts to provide the requisite reasonable suspicion that would justify dispensing with the rule of announcement. *Id.*, ¶¶ 7–8. The paragraph of the supreme court's opinion on which the State relies is part of the court's discussion of the standard applicable to its review of that determination. *Id.*, ¶ 10. Because no findings of fact were at issue, the supreme court concluded that its review was de novo, *id.*, ¶ 11, and its ultimate conclusion was that "the affidavit was insufficient to establish reasonable suspicion and, thus, the Commissioner erred in issuing a no-knock warrant," *id.*, ¶ 26 (footnote omitted).

¶ 17. The question before the supreme court in *Eason* dealt only with the sufficiency of the warrant application itself and the consequences which should flow from the officers' good faith belief that they had judicial authorization to effect a no-knock entry. The court's ultimate conclusion was that "because the police officers acted in objectively reasonable reliance upon the search warrant, which had been issued by a detached and neutral magistrate, the laudable purpose of the exclusionary rule—deterring police from making illegal searches and seizures—would not be furthered by applying the exclusionary rule." *Id.*, ¶ 2. It appears that no argument was made in *Eason* that, notwithstanding the officers' good faith reliance on the warrant, the State was obligated to establish that the officers had not acquired information following its issuance that would have negated the circumstances described in the warrant application.

¶ 18. In short, the supreme court did not address in *Eason* the claim Whiting raises in this appeal. Given the court's unequivocal statements in *Meyer* and *Henderson*, and those of the U.S. Supreme Court in *Richards*, we conclude that when the reasonableness of a no-knock entry is challenged, the State must present evidence of the circumstances known or reasonably suspected by police to exist at the time of warrant execution that would justify a no-knock entry.[4] If those circumstances were described in the warrant application, the State's evidence might consist of nothing more

[4] Even in the paragraph from *Eason* on which the State relies, the court noted that "the reasonableness of the police officers' decision to effectuate a no-knock entry is usually evaluated as of the time of entry." *State v. Eason*, 2001 WI 98, ¶ 10, 245 Wis. 2d 206, 629 N.W.2d 625.

than testimony by an officer that nothing had come to the officers' attention to lead them to believe that circumstances had changed. If, however, the warrant application is silent or lacking in regard to circumstances which might render an announced entry dangerous or futile, the State may still justify a no-knock entry by showing that officers possessed the requisite reasonable suspicion at the time of entry. *See Henderson*, 245 Wis. 2d 345, ¶ 3.

¶ 19. Next, because the Washington men were "the primary focus of the investigation," and because they were actually found in the Whiting residence when the warrant was executed, the State would have this court infer that reasonable suspicion for a no-knock entry must have existed at the time of entry. The fact that a given search produces what was sought, however, cannot be used to establish the pre-search existence of the requisite knowledge or belief to justify the search, or in this case, the manner of its execution. *Cf. State v. Ford*, 211 Wis. 2d 741, 750, 565 N.W.2d 286 (Ct. App. 1997) ("The fact that the officer's suspicion was confirmed by evidence found during the unauthorized search cannot be used after the fact to bootstrap that suspicion into probable cause for an arrest.").

¶ 20. Rather, we conclude that once a defendant has moved to suppress evidence because officers did not knock and announce their presence before executing a search warrant, the State must present evidence to establish the reasonable suspicion required for the no-knock entry. *See Meyer*, 216 Wis. 2d at 753 ("[R]easonable suspicion . . . must be shown by the particular facts in each case."). Neither this court nor the circuit court may "fill in the blanks" and relieve the State of its

obligation to show that, under the circumstances existing at the time of entry, a no-knock entry was reasonable and thus permitted under the Fourth Amendment.

¶ 21. We therefore remand to permit the State to present testimony regarding the circumstances at the time of execution of the search warrant, and for Whiting to cross-examine and present countering evidence.[5] If after hearing the relevant testimony, the court concludes that the officers had, at the time of entry, "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime," *Richards*, 520 U.S. at 394, the court shall reinstate the conviction. *See Meyer*, 216 Wis. 2d at 754. If the court concludes otherwise, however, it must grant Whiting's suppression motion.

## CONCLUSION

¶ 22. We reverse the appealed judgment and remand to the circuit court for an evidentiary hearing as directed above.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[5] At the second hearing on Whiting's motion, defense counsel told the court that he had been "prepared to present evidence [at the first hearing], and I was prepared to go on that date with cross-examination of witnesses."